Philip R. Weltin, Esq. SBN 46141
Daniel R. Weltin, Esq. SBN 226600
WELTIN LAW OFFICE, P.C.
1432 Martin Luther King Jr. Way
Oakland, California  94612
Telephone (510) 251-6060
Facsimile   (510) 251-6040

Attorneys for Plaintiffs
Rosa Galindo; Maria Galindo

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rosa Galindo; Maria Galindo,<br><br>            Plaintiffs,<br><br>        v.<br><br>Financo Financial, Inc.; Patrick Patchin; Ahmed Yama Asefi, Aaroon Sadat and Nazia Nawabzada; Countrywide Bank, N.A.; Countrywide Financial Corp.; Homecomings Financial Network; Commonwealth Land Title Company; Joseph Esquivel, Pamela Spikes, and Does 1-100,<br><br>            Defendants. | Case No. 3:07-cv-3991 EMC<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      By this First Amended Complaint, Plaintiffs Rosa Galindo and Maria Galindo seek redress for the fraudulent and predatory lending practices of Defendants as set forth herein.

1

**JURISDICTION AND VENUE**

2.     Plaintiffs' Complaint was initially filed in Alameda County Superior Court.

Defendant Countrywide Bank, N.A. removed this action to the present Court pursuant to

28 U.S.C. § 1441(a).  Plaintiffs' Complaint alleges causes of action arising under the Truth

in Lending Act, 15 U.S.C. § 1601, et seq. and Federal Reserve Regulation Z, 12 C.F.R. §

226.1, et seq.; the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. and

Federal Reserve Regulation X, 24 C.F.R. § 3500, et seq.; and the Fair Housing

Amendments Act, 42 U.S.C. § 3601, et seq.  Accordingly, this Court has jurisdiction

pursuant to 28 U.S.C. § 1331.  Plaintiffs' Complaint also alleges violations of various state

laws, as set forth herein.  Supplemental jurisdiction over Plaintiffs' state law claims exists

pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because this

action concerns real property located in Alameda County, California, agreements and

contracts entered into in California, and tortious and other wrongful acts which took place

in Alameda County, California.

**GENERAL ALLEGATIONS**

4.     Plaintiffs Rosa Galindo and Maria Galindo are residents of Alameda County,

California.

5.     At all relevant times, Defendants Financo Financial, Inc. (hereinafter "Financo"),

Countrywide Bank, N.A. and Countrywide Financial Corporation (hereinafter

"Countrywide"), Commonwealth Land Title Company (hereinafter "Commonwealth"),

Homecomings Financial Network (hereinafter "Homecomings") and Does 1-10 were

corporations or other business entities organized under the laws of a state unknown to

Plaintiffs and are and were doing business as licensed finance lenders and/or mortgage brokers and/or financial institutions and/or title insurers in California, including sub-prime mortgage lending or otherwise extending credit to persons in residential real estate transactions.  Plaintiffs are informed and believe and thereon allege that Defendant Financo was and is licensed by the California Department of Real Estate as a real estate broker by designating an officer, Ahmed Yama Asefi, who held a valid real estate broker license, and that its business included the brokerage of residential real estate mortgage loans and the representation of parties in residential real estate transactions.

6.    Plaintiffs are informed and believe and on that basis allege that Defendants Ahmed Yama Asefi and Aaroon Sadat are officers and/or agents of Financo.  Plaintiffs are informed and believe and thereon allege that these Defendants performed and failed to perform such acts, including but not limited to, being inadequately capitalized, commingling assets, and failing to observe formalities such that at all times there existed a unity of interest and assets between these Defendants and their shareholders, officers, partners, and/or directors who are named herein either by name or fictitiously, and that any separateness between the individual and business entities may have ceased to exist. Therefore, adherence to the fiction of the separation between these corporate or partnership Defendants and their officer and/or shareholder Defendants could lead to an abuse of corporate privilege, sanction fraud, and promote injustice.

7.    Plaintiffs are informed and believe and on that basis allege that Defendant Nazia Nawabzada is an employee and/or agent of Defendant Countrywide.

3

8.     Plaintiffs are informed and believe and on that basis allege that Defendants Joseph Esquivel, Pamela Spikes and Does 11-15 are notary publics for the State of California, whose commissions were active during all relevant times in this Complaint.

9.     Plaintiffs do not know the true names and capacities of the Defendants sued herein as Does 1-100 inclusive, and therefore sue said Defendants by fictitious names.  Plaintiffs will amend this complaint to allege the Doe Defendants' true names and capacities when they have been ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is responsible in some manner for the events alleged below, and that Plaintiffs' damages were proximately caused by the Doe Defendants' conduct.

10.     At all times herein mentioned Patrick Patchin was an employee of Financo, and was not licensed to arrange or procure real property loans, but that Financo held him out to be a licensed agent on their website and issued him a business card.

11.     Plaintiffs are informed and believe and on that basis allege that Defendants Financo, Patrick Patchin, Ahmed Yama Asefi, Aaroon Sadat and Does 21-40 (referred to sometimes herein as the "Broker Defendants") were the principal or were acting as the agent, servant, and/or employee of each other, and in connection with the matters alleged herein were acting in the course and scope of such agency, service, or employment relationship.  Plaintiffs are further informed and believe and thereon allege that Defendant Financo and Does 1-40 consented to, ratified, encouraged, approved, adopted, commenced, and/or participated in the acts, transactions or other matters herein alleged.

4

12.    Plaintiff Rosa Galindo had no formal education, is unable to read, and was not sophisticated in real property loans or related business matters at the time of the activities described herein.

13.    Plaintiff Rosa Galindo owned a fourplex at 4646 Sheppard Avenue, Hayward, (Parcel No. 453-0060-010-02, legal description attached as Exhibit A and incorporated herein) and a house at 27590 Manon Avenue, Hayward, California (Parcel No. 453-0045-022-03, legal description attached as Exhibit B and incorporated herein), amongst other properties.  In or about April or May, 2006, she contacted her bank about refinancing some of her houses to obtain money to build a house in Tracy.  She then began getting phone calls from various brokers and agents, including Patrick Patchin.  Plaintiff Rosa Galindo told Patchin what she was looking for and that she wanted a fixed rate loan.  He told her that he worked for Financo and could obtain a loan with fixed rates between 1.5% to 2.0% for the first five years.

14.    On or about May 16, 2006 Patrick Patchin came to the house of Plaintiff Rosa Galindo with Defendant Esquivel, a notary, and with papers to procure loans to refinance the Manon and Sheppard properties.  Defendant Patchin told Plaintiff Rosa Galindo that the notary had to leave soon, rushed her into signing the papers, and left without giving her copies of what she had signed.  He did not explain the fees and charges being made and misrepresented the terms of the loans.  He did not disclose that the loan application stated she earned $18,000 per month.  The loan papers went into escrow on or about May 17, 2006 and escrow closed on or about May 23, 2006.  Plaintiff has never received copies of certain of the signed documents from Defendants, and has received copies of certain other signed documents from Defendants only through her attorney.  She did

5

receive a lump sum distribution of the proceeds of the refinanced loans. In connection

with the new loan on the Manon property, Financo received from the proceeds $8,262 in

loan origination fees and $1,330 in administrative and processing fees. Financo also

received $12,937.59 from the lender, Homecomings, as a "broker fee". In connection with

the Sheppard property, Financo received $10,000 in loan origination fees and $1,300 in

administrative fees from the proceeds of the new loan. Financo also received $11,250 as

a "broker fee" from the lender, Homecomings. Plaintiff Rosa Galindo was never informed

of the nature and amount of the fees that were incurred or that would be charged to her

and taken from the proceeds of the new loans, or that the broker fees would result in a

higher interest rate on the loans. Contrary to the representations of Patrick Patchin, the

new loans were not loans with the initial five years on a fixed rate, but were adjustable rate

balloon loans, with an initial "teaser" rate of 1.75% which could be adjusted on a monthly

basis beginning on July 1, 2006, up to a maximum rate of 9.95%.

15.    Rosa Galindo, believing she had obtained favorable financing on her properties,

introduced Patrick Patchin to her daughter Maria Galindo, who resided in a house at

27935 Mandarin Avenue, Hayward, CA (Parcel No. 464-0010-003, legal description "All

that certain real property situated in the County of Alameda, State of California, described

as follows: (City of Hayward) Lot 15, Block 5, 'Tract 1424', filed September 3, 1954, in

Book 34 of Maps, Pages 98 and 99, Alameda County Records"). On or about July 5, 2006

Defendants Financo and Patrick Patchin had Maria Galindo and Rosa Galindo sign

documents including loan documents. The documents resulted in a loan that refinanced

the property, with the loan in the names of Maria Galindo and Rosa Galindo. As a result of

refinancing the property, Plaintiffs paid from the proceeds of the new loan $13,381.78 in

6

prepayment penalties for the prior loan, and $6,888 in loan origination fees plus $1,300 in broker processing fees and administrative fees to Financo.  Financo also received a payment for a yield spread premium from the lender, Defendant Countrywide, in the amount of $13,776.00.  Financo also received an "underwriting" fee of $750.  Plaintiffs were not informed of these costs and fees at the time the papers were signed by Maria Galindo and Rosa Galindo, or that they would have to pay prepayment fees to refinance the existing loan, or that the yield spread premium would result in a higher interest rate. The prior loan was in the amount of $478,883.52, and the payoff of that loan was $502,549.90. In order to refinance it Defendant Countrywide issued a new loan in the amount of $459,200 and a second mortgage in the amount of $57,400.  Plaintiffs were required to provide an additional $4,130 to complete the transaction.  As with the other loan documents, Patchin, Esquivel and Commonwealth did not provide the Galindos with copies of the loan documents, including the Notice of Right to Cancel and the HUD-1 form. Approximately, three weeks later Patchin provided the Galindos with an incomplete and unsigned copy of these loan documents.

16.    Rosa Galindo, believing that Patrick Patchin was working as an agent of Financo, was directed by Patchin to some real property for sale in Petaluma, California, and initially transferred $150,000 to Patchin.  Patchin then informed Rosa Galindo that that deal had soured, and had her sign papers for the purchase of an alleged 40-acre parcel in Colusa, California.  That parcel does not exist.

7

# FIRST CAUSE OF ACTION

## Breach of Fiduciary Duty

17.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

18.    The Broker Defendants, as mortgage brokers and finance lenders, owed Plaintiffs a fiduciary duty to disclose all the material terms of the loans and to act in good faith and in the best interests of the Plaintiffs.

19.    The Broker Defendants breached their fiduciary duty by, amongst other things: falsifying information on Rosa Galindo's loan application; failing to explain the terms of the loan transactions to Plaintiffs; providing Plaintiffs with loan products which carried higher rates of interest than was necessary purely to increase their own profits on the transaction; not providing Plaintiffs with copies of the loan documents, including the right to rescind notification; and failing to comply with TILA, RESPA and other consumer protection statutes and regulations intended to benefit and protect consumers such as Plaintiffs.  In taking these actions, making these misrepresentations, and by failing to disclose the terms of the loans and that the loans were not loans with the initial five years on a fixed rate, said Broker Defendants breached their fiduciary duty.

20.    Defendant Commonwealth owed a fiduciary duty to the Plaintiffs to comply strictly with the escrow instructions and was obligated to exercise reasonable skill and diligence in carrying out the instructions and to comply strictly with them.

21.    Defendant Commonwealth breached its fiduciary duty by failing to exercise reasonable skill and diligence and by failing to comply with the directions of the parties and by failing to provide Plaintiffs with copies of all loan documents.

8

22.    As a proximate result of the Broker Defendants' and Defendant Commonwealth's breach of their fiduciary duties, Plaintiffs have been damaged in an amount within the jurisdiction of this Court.

23.    Said Defendants' acts in violation of their fiduciary duties to Plaintiffs were done willfully and in conscious disregard of its fiduciary obligations and Plaintiffs are entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

### Negligence

24.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

25.    Plaintiffs are informed and believe and thereon allege that prior to his employment by Financo, Defendant Patrick Patchin had been convicted and incarcerated for crimes involving, among other things, fraud.

26.    Defendant Financo represented to the community that it maintained the highest standards of professionalism, and that everything it did was backed by solid business sense and integrity, and that people could trust their business with Financo.

27.    The Broker Defendants owed a duty of care to Plaintiffs and owed a further special duty of care as specialists with respect to mortgage brokering services.  Plaintiffs are informed and believe and thereon allege that Defendants Financo, Ahmed Yama Asefi, Aaroon Sadat, and Does 1 to 50, negligently and carelessly hired Patrick Patchin, without an adequate background check, failed to properly train Patchin, failed to properly supervise Patchin and his activities and methods of doing business, failed to ensure that he was competent and trustworthy before placing him in a position requiring those

9

qualities, and failed to ensure that he was not making misrepresentations to his clients. The Broker Defendants further breached their duties of care by failing to thoroughly explain the terms of the loan agreements, ensuring that Plaintiffs understood the terms of the agreements and the total amount and character of the fees being charged in connection with the loans.

28.    Defendants Countrywide and Homecomings (hereinafter referred to sometimes as the "Lender Defendants") owed a duty of care to Plaintiffs not to maintain abusive lending practices and market abusive loan products and owed a further special duty of care as mortgage lenders who actively participated in the lending process beyond the domain of the usual mortgage lender.  Plaintiffs are informed and believe and thereon allege that Defendants Countrywide and Nazia Nawabzada intentionally and/or negligently altered Plaintiffs' stated income in the process of approving Plaintiffs' loan with Defendant Countrywide.  Plaintiffs are informed and believe and thereon allege that Defendant Countrywide was negligent when it engaged in abusive lending practices of not adequately verifying if the borrower had the financial wherewithal to service the debt and by lending the money so that it could package together similar loans and sell them as securities. Further, Plaintiffs are informed and believe and thereon allege that the Lender Defendants engaged in negligent lending practices by failing to verify the name and license of the brokers who sold loan products for the Lender Defendants, and by failing to recognize multiple loan transactions that should have alerted them to the fraud being perpetrated upon Plaintiffs.

29.    Defendant Commonwealth owed a duty of care to Plaintiffs and owed a further special duty of care as a title company.  Plaintiffs are informed and believe that Defendant

10

1  Commonwealth breached this duty by failing to exercise reasonable skill and diligence and

2  by failing to comply with the directions of the parties, as set forth herein.

3  30.    As a proximate result of said Defendants' negligence, Plaintiffs entered into loans

4
5  the terms of which they did not understand and which contained undisclosed fees and

6  terms, as a consequence of which they incurred substantial prepayment penalties and

7  increased interest rates and payments and purchased property that does not exist.

8  Plaintiffs have suffered damages for excessive fees and costs, increased interest

9
10  expenses and other damages in an amount within the jurisdiction of this Court, and will

11  continue to suffer damages for increased interest payments in the future, and Rosa

12  Galindo has lost in excess of $150,000 in connection with the purchase of the non-existent

13  lot.

14

15  **THIRD CAUSE OF ACTION**

16  **Violation of the Truth in Lending Act**

17  31.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though

18
19  set forth fully herein.

20  32.    Defendants Countrywide, Homecomings and Financo are creditors within the

21  meaning of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq., as implemented by

22  Regulation Z.

23
24  33.    Defendants Countrywide, Homecomings and Financo violated TILA and Regulation

25  Z by failing to provide the Plaintiffs with the material disclosures required by TILA.

26  34.    Any statutes of limitations relating to disclosures and notices required under TILA

27  were tolled due to said Defendants' failure to provide all of the required disclosures and

28  notices.

11

Galindo, et al. v. Financo, et al.
Second Amended Complaint

35.    As a direct result of these violations, Plaintiffs were and are being damaged in an amount within the jurisdiction of this Court including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transactions alleged herein, excluding principal payments, if any.

36.    Said Defendants were unjustly enriched at the expense of Plaintiffs who are entitled to rescission, equitable restitution and disgorgement of profits obtained by said Defendants.

37.    Plaintiffs believe the acts of said Defendants were willful, wanton and in conscious disregard of the rights of Plaintiffs and Plaintiffs are entitled to recover punitive damages.

## FOURTH CAUSE OF ACTION

### Violation of the Real Estate Settlement Procedures Act

38.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

39.    The loan agreements and home loans between Plaintiffs and Defendants Countrywide, Homecomings and Financo are federally regulated mortgages under the Real Estate Settlement Procedures Act, 12 U.S. C. § 2601 et seq. (RESPA).

40.    RESPA prohibits any person from paying or accepting a kickback or an excessive or unearned fee.  Plaintiffs are informed and believe and thereon allege that the fees paid or received by Defendants Countrywide, Homecomings and Financo were unlawful, excessive, unearned, duplicative and not reasonably related to the services performed by Defendants as required by RESPA.

12

Galindo, et al. v. Financo, et al.
Second Amended Complaint

41.     The Lender Defendants' payment of such fees, and Financo's and its officers and employees acceptance of such charges and payments violated RESPA's prohibitions against unlawful kickbacks and/or unearned fees.

42.     The Lender Defendants knew or should have known that Financo did not earn the fees.

43.     Plaintiffs are informed and believe and thereon allege that Defendants Countrywide, Homecomings and Financo failed to provide the disclosures required by RESPA in an accurate and timely manner, including the HUD-1 form required under 12 U.S.C. § 2603 and Regulation X.

44.     As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer damages in an amount within the jurisdiction of this Court.

## FIFTH CAUSE OF ACTION

### Fraud (Intentional Misrepresentation)

45.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

46.     Defendant Patrick Patchin, acting in the course and scope of his employment with Financo, and the Broker Defendants represented to Plaintiffs that important facts were true: 1) that Plaintiffs would receive interest rates of 1.5% to 2.0% on 5 year fixed rate loans; 2) that the Broker Defendants would not change the terms of the loans without Plaintiffs' knowing consent; 3) that the Broker Defendants would not cause Plaintiffs to incur prepayment penalties; 4) that the loans were not negatively amortizing loans; and 5) that Patchin was selling Rosa Galindo real property in Colusa, California.

47.     Said Defendants' representations were false.

Galindo, et al. v. Financo, et al.
Second Amended Complaint

48.    Said Defendants knew that the representations were false when they made them. .

49.    Said Defendants intended that Plaintiffs rely on the representations.

50.    Plaintiffs reasonably relied on the Broker Defendants' representations.  The Broker Defendants further promised that they would take care of everything and that Plaintiffs need not worry about the terms provided for in the loan documents, and prevented Plaintiffs from having an opportunity to read the loan papers and learning the actual terms of the loans and the costs they would incur, and preventing them from canceling the transactions by not giving them copies of the signed documents and notice of cancellation, or advising them of their right to cancel.  Plaintiffs relied on the Broker Defendants' representations because Plaintiffs trusted the Broker Defendants as experts in their business, and trusted that the Broker Defendants would not take advantage of Plaintiffs; at no time did the Broker Defendants state that they would not uphold the terms of the agreement or that they were going to commit other deceitful acts toward Plaintiffs.

51.    Plaintiffs are informed and believe that Defendants Countrywide and Nazia Nawabzada intentionally and/or negligently caused Plaintiffs' stated income to be altered in the process of approving Plaintiffs' application for a loan with Defendant Countrywide.

52.    Plaintiffs were harmed because they are now liable for loans at higher interest rates.  Plaintiffs are further harmed because they have had to pay excessive closing costs and a pre-payment penalty for refinancing the Mandarin property.

53.    Plaintiffs' reliance on all Defendants' representations was a substantial factor in causing their harm.

14

54.    In doing the acts alleged herein, Defendants acted with oppression, fraud and malice and Plaintiffs are entitled to punitive damages pursuant to California Civil Code § 3294.

### SIXTH CAUSE OF ACTION

### Fraud (Concealment)

55.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

56.    The Broker Defendants and Plaintiffs were in a fiduciary relationship as a result of the real estate or broker relationship with Plaintiffs as clients.

57.    The Broker Defendants concealed important facts from Plaintiffs including, amongst others, that: 1) Plaintiffs were agreeing to adjustable rate loans of 30 to 40 years duration with rates up to 10% to 12%, not loans where the first five years was fixed at a low interest rate; 2) that the loans were, in effect, negatively amortizing loans; and 3) that refinancing the Mandarin Avenue property would result in a substantial prepayment penalty.

58.    Said Defendants knew that they concealed the above referenced facts.

59.    Said Defendants intended that their concealment of the true facts would cause Plaintiffs to sign the loan agreements because of Plaintiffs ignorance of those facts;

60.    Plaintiffs did not know of the concealed facts because the Broker Defendants concealed the loan documents by flipping to the pages for signatures while covering up or not disclosing the important information, and failed to leave copies of the signed documents or providing copies later.  The Broker Defendants also knew that Rosa Galindo could not read.

15

Galindo, et al. v. Financo, et al.
Second Amended Complaint

61.     Said Defendants intended to deceive Plaintiffs by concealing the facts and thereby induce Plaintiffs to sign the documents

62.     Plaintiffs reasonably and actually relied on the Broker Defendants' statements because Plaintiffs and said Defendants were in a relationship of trust as professional agents to Plaintiffs.

63.     Plaintiffs were justified in relying on the Broker Defendants' statements because said Defendants were in the business of processing loan applications and were supposedly working for the Plaintiffs.

64.     Plaintiffs were harmed because they are required to pay a higher interest rate and incurred excessive fees and costs in obtaining the loans.

65.     Said Defendants' concealment was a substantial factor in causing Plaintiffs' harm.

66.     Plaintiffs are informed and believe, and on that basis allege, that the conduct of the Broker Defendants was willful and intentional.  The directors, officers, and managing agents of Defendant Financo authorized the fraudulent conduct of its employees before the fact and ratified the conduct after the fact by accepting the benefits of the contract and failing to discharge or discipline responsible employees.  In doing the acts alleged herein, said Defendants acted with oppression, fraud and malice and Plaintiffs are entitled to punitive damages pursuant to California Civil Code § 3294.

## SEVENTH CAUSE OF ACTION

### Fraud (Negligent Misrepresentation)

67.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

16

68.    The Broker Defendants represented the following to Plaintiffs: 1) Plaintiffs would receive interest rates of 1.5% to 2.0% for 5 years at a fixed rate; 2) that the Broker Defendants would not change the terms of the loans without Plaintiffs' knowing consent; 3) that the loans were not negatively amortizing loans; and 4) that the Broker Defendants would not cause Plaintiffs to incur prepayment penalties.

69.    When said Defendants made these representations, they had no reasonable grounds for believing them to be true in that in that said Defendants could have not have obtained such good financing and terms for the Plaintiffs at that time.

70.    The Broker Defendants made these representations with the intention of inducing the Plaintiff to act in reliance on these representations, or with the expectation that the Plaintiff would so act.

71.    Defendants Countrywide and Nazia Nawabzada intentionally and/or negligently caused Plaintiffs' stated income to be altered in the process of approving Plaintiffs' application for a loan with Defendant Countrywide.

72.    Plaintiffs' reliance on all Defendants' representations was a substantial factor in causing their harm.

73.    Plaintiffs were damaged by such misrepresentations and reliance thereon by becoming liable for higher interest rates, for having prepayment penalties and for paying for closing costs.

## EIGHTH CAUSE OF ACTION

### Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

74.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

17

Galindo, et al. v. Financo, et al.
Second Amended Complaint

75.    On or about the dates alleged herein, Plaintiffs and the Broker Defendants entered into an oral contract and the Broker Defendants agreed to obtain a home-financing loan and refinancing loans for Plaintiffs according to the terms outlined above.  The Broker Defendants breached these contracts by deceiving Plaintiffs into signing loan application papers on which resulted in a long term adjustable rate loan, rather than a loan with a 5 year fixed low interest rate that had been promised.

76.    Plaintiffs performed all duties owed to the Broker Defendants, including signing all of the documents.

77.    The Broker Defendants have materially breached the contract by the actions herein, including, but not limited to, deceiving Plaintiffs into signing loan application papers for adjustable rate loans with a one month teaser rate, failing to obtain loans for the properties according to the terms of their agreement as outlined above; and for incurring penalties for Plaintiffs; and failing to reimburse Plaintiffs all fees and finance charges they had incurred in the transaction.

78.    As a result of said Defendants' breach, Plaintiffs have been damaged in an amount within the jurisdiction of this Court.

79.    California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

80.    As a result of the actions of the Broker Defendants, set forth herein, said Defendants have breached the parties' contract and have violated the implied covenant of good faith and fair dealing contained in the agreements and contracts between the parties, and as a result thereof, Plaintiffs are entitled to damages as more fully set forth below.

18

# NINTH CAUSE OF ACTION

## California Consumers Legal Remedies Act

81.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

82.    Plaintiffs have been damaged as a result of the actions of the Broker Defendants and the Lender Defendants.

83.    The loans at issue constitute a service sold to Plaintiffs primarily for personal, family or household purposes pursuant to California Civil Code § 1761(b).

84.    Plaintiffs are consumers pursuant to California Civil Code § 1761(d).

85.    The loans to Plaintiffs were transactions pursuant to California Civil Code § 1761(e).

86.    The Broker Defendants violated the Consumers Legal Remedies Act, California Civil Code § 1750 et seq. in that the loans sold were not loans where the first five years were a fixed rate, unconscionable fees were inserted into the loans, said Defendants misrepresented their licensing status, and said Defendants represented that their products and services had characteristics and benefits which they did not have, amongst other things.

87.    Plaintiffs are informed and believe that the Lender Defendants marketed and sold a negatively amortizing loan product, which was designed for a sophisticated investor, to the least sophisticated investor in order to repackage the products and sell the loans as securities.  The Lender Defendants paid exorbitant kickback fees in the form of yield spread premiums to Financo so that Financo would sell these products.  Plaintiffs are informed and

believe and thereon allege that Countrywide also altered Plaintiffs' stated income on the loan application to make sure the abusive loans were approved.  Plaintiffs are informed and believe and thereon allege that Countrywide engaged in misleading marketing campaigns to promote their predatory loan products.

88.    Plaintiffs concurrently with the filing of this Complaint have served Financo, Countrywide Bank, N.A., Countrywide Financial Corporation and Homecomings Financial Corporation a Consumers Legal Remedies Act notification and demand letter via certified, return receipt requested U.S. Mail.

89.    Section 1780(a)(2) of the Act provides that a consumer is entitled to an injunction prohibiting acts or practices which violate the Act.  Plaintiffs seek an order enjoining Defendant from the acts, methods and practices as set forth in this Complaint and for payment of restitution.

90.    The Consumers Legal Remedies Act provides that a violation of the Act not remedied within thirty (30) days of notification entitles Plaintiffs to rescission, actual damages, attorneys' fees and costs.

## TENTH CAUSE OF ACTION

### Negligence of a Notary Public

91.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

92.    Defendants Joseph Esquivel and Pamela Spikes owed a professional duty to Plaintiffs.

93.    Defendants breached that duty when they notarized the signatures of Plaintiffs.

20

94.    California Government Code § 8214 states, "For the official misconduct or neglect

of a notary public, the notary public and the sureties on the notary public's official bond are

liable in a civil action to the persons injured thereby for all the damages sustained."

95.    Plaintiffs suffered damages as a result of the notaries' misconduct and negligence

because the notaries' seals allowed the documents signed by the Plaintiffs to be

processed.

96.    Defendants caused damage to the Plaintiffs because but for notarizing Plaintiffs'

signatures, the loan documents would not have been processed and all resulting damages

herein alleged would not have occurred.

## ELEVENTH CAUSE OF ACTION

### Breach of Contract against Commonwealth

97.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though

set forth fully herein.

98.    By virtue of the escrow arrangements on their loans, Plaintiffs entered into a written

contract with Defendant Commonwealth on each of the loan transactions. The terms of the

contract are those set forth in the borrowers and lenders escrow instructions.

99.    The contract entered into with Defendant Commonwealth required that said

Defendant photocopy each borrowers state issued identification, warrant the authenticity

of each party's signature, prepare and attach notary acknowledgements and ensure that

no alterations or erasures were made to any loan documents without the prior written

approval of the parties, pay from the loan proceeds only those fees and costs identified in

escrow instructions and understood and approved by the borrowers, ensure that loan

21

documents were not released from title/escrow offices for signature, and notify the lender if Defendant knew or should have known of multiple transactions involving the borrowers. Said Defendant also had a duty as an escrow holder to obtain evidence that the brokers were regularly licensed before delivering compensation and to make available for inspection by the borrower at or before settlement the uniform settlement statement known as a HUD-1 form required by 12 U.S.C. § 2603.

100.    The Plaintiffs fulfilled all the obligations required of them under the terms of the contract/escrow instructions.

101.    Plaintiffs are informed and believe that Defendant Commonwealth breached the escrow contracts by failing to ensure the terms set forth above were followed and by otherwise failing to ensure the transactions were completed in accordance with the directions of the parties to the escrow, including but not limited to warranting the signatures of the parties executing the loan documents without a reasonable basis for making the warranty, releasing loan documents to the broker Defendants for signature, failing to prepare and attach notary acknowledgments, accepting loan documents that had been altered by the broker Defendants without the written approval of the parties to the escrow, paying from the loan proceeds fees and costs not identified in the escrow instructions or approved by the Plaintiffs and without demand, failing to have Plaintiffs acknowledge receipt of the three-day rescission notice and/or failing to give copies of it to Plaintiffs, and failing to ensure the Plaintiffs understood their rescission rights and the rescission process, giving proceeds of the loan to individuals or entities without the written authorization of the Plaintiffs, failing to obtain evidence the broker Defendants handling the transactions were licensed and giving them compensation arising out of the transactions in

22

violation of California Business & Professions Code § 10138, failing to make available for inspection by Plaintiffs a completed HUD-1 form, and failing to notify the lender when it knew or should have known of multiple transactions involving the Plaintiffs and Rosa Galindo in particular.

102.    As a proximate result of said Defendants breach of their contractual obligations, Plaintiffs have been damaged in an amount within the jurisdiction of this Court and have incurred attorneys' fees and costs.

### TWELFTH CAUSE OF ACTION

#### Civil Conspiracy

103.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

104.    Defendants conspired against Plaintiffs to accomplish by concerted action an unlawful purpose by misrepresenting the actual nature and terms of the loan documents.

105.    As a result of Defendants' conduct, Plaintiffs have sustained damages in an amount within the jurisdiction of the Court.

### THIRTEENTH CAUSE OF ACTION

#### Violation of California Civil Code § 1632

106.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

107.    The Broker Defendants failed to provide any disclosures in the Spanish language despite the fact that the loans were negotiated primarily in Spanish, in violation of California Civil Code § 1632.

23

108.   Pursuant to California Civil Code § 1632(k), said Defendants must allow plaintiffs to rescind such loans.  Pursuant to California Civil Code § 1691, this complaint serves as notice of rescission.

## FOURTEENTH CAUSE OF ACTION

### Violation of the Fair Housing Amendments Act

109.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

110.   The Broker Defendants have violated the Fair Housing Amendments Act by inducing Plaintiffs to enter into predatory mortgage loans with adjustable interest rates, negative amortizations, balloon payments, and very high fees, despite knowing that these loans were not suitable for Plaintiffs.  The Broker Defendants specifically targeted their products and services, which were inferior and predatory, to Hispanic individuals.

111.   Said Defendants have discriminated in the provision of services in connection with a residential real estate transaction because of race, color, and national origin of the borrower in violation of 42 U.S.C. § 3605.

112.   As a result of said Defendants' conduct, Plaintiffs have sustained damages in an amount within the jurisdiction of the Court.

## FIFTEENTH CAUSE OF ACTION

### Violation of Fair Employment and Housing Act

113.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

24

114.    The Broker Defendants have violated the Fair Employment and Housing Act by inducing Plaintiffs to enter into predatory mortgage loans with adjustable interest rates, negative amortizations, balloon payments, and very high fees, despite knowing that these loans were not suitable for Plaintiffs.  The Broker Defendants specifically targeted their products and services, which were inferior and predatory, to Hispanic individuals.

115.    Said Defendants have discriminated against Plaintiffs because of their race and national origin in the provision and arrangement of financial assistance for the refinancing of housing accommodations, in violation of California Government Code § 12955(e).  Said Defendants have further discriminated against Plaintiffs because of their race and national origin in the terms and conditions of a real estate-related transaction, in violation of California Government Code § 12955(i).

116.    As a result of said Defendants' conduct, Plaintiffs have sustained damages in an amount within the jurisdiction of the Court.

## SIXTEENTH CAUSE OF ACTION

### Violation of Unfair Competition Act

117.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though set forth fully herein.

118.    Plaintiffs are informed and believe and thereon allege that said Defendants and Does 1- 50 have been engaged in and continue to be engaged in acts and/or a pattern and practice of unfair competition in violation of Business and Professions Code § 17200 et. seq., including but not limited to:

(a)    using high pressure sales tactics;

25

(b)    failing to inform and explain to Plaintiffs the loan products available to them and the effects of fees on the interest rate available to them;

(c)    misrepresenting the terms of the loans and the character of fees being charge;

(d)    engaging in self-dealing at the expense of borrowers by charging both loan origination fees and paying and accepting a yield spread premium or broker fees;

(e)    misrepresenting the prepayment fees and other fees charged in connection with loan transactions;

(f)    violating California Penal Code 532(a) in that Financo misrepresented Rosa Galindo's ability to service debt;

(g)    violating the Consumers Legal Remedies Act, California Civil Code § 1750 et seq.;

(h)    failing to provide the disclosures required by RESPA in an accurate and timely manner, including the HUD-1 form required under 12 U.S.C. § 2603 and Regulation X;

(i)    violating California Business and Professions Code § 10137;

(j)    violating California Civil Code § 1632;

(k)    violating the Fair Housing Amendments Act, specifically 42 U.S.C. § 3605;

(*l*)    violating the Fair Employment and Housing Act, California Government Code § 12955 et seq.;

(m)    violating California Finance Code § 22302 by selling Plaintiffs loans with unconscionable terms; and

(n)    breaching the fiduciary duties Defendants owed to Plaintiffs.

26

119.    The above-described unlawful, unfair and fraudulent business practices are an ongoing threat of injury to Plaintiffs and the general public.  Plaintiffs and the general public continue to be financially harmed by such conduct and, unless restrained, defendants will continue to engage in such conduct.

120.    Pursuant to California Business & Professions Code § 17203, Plaintiffs are entitlted to an order of this Court enjoining Defendants from continuing to engage in unfair competition, as defined in Business & Professions Code § 17200, in the State of California.  Plaintiffs and the general public will be irreparably harmed if such an order is not granted.

121.    Defendants have been unjustly enriched at the expense of the Plaintiffs who therefore are entitled to restitution and disgorgement of profits realized by Defendants.

## SEVENTEENTH CAUSE OF ACTION

### Violation of California Civil Code § 1921

122.    California Civil Code Section 1921 states that all lenders offering adjustable-rate residential mortgage loans shall provide to prospective borrowers a copy of the Federal Reserve Board's "Consumer Handbook on Adjustable Rate Mortgages" upon request of the borrower or at the same time the lender first provides written information concerning any adjustable-rate residential mortgage loan to the borrower, whichever is earlier.

123.    The Lender Defendants did not provide Plaintiffs with this publication.

124.    As a result of the failure to provide Plaintiffs with this publication, Plaintiffs seek to recover actual damages, costs and attorney's fees.

Galindo, et al. v. Financo, et al.
Second Amended Complaint

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs prays for judgment as follows:

1.      For a declaration by the Court that the transactions be rescinded, cancelled, null, void and of no effect;

2.      For determination by the Court that the loan agreements purporting to authorize Defendants to obtain home-financing or home-refinancing loans on Plaintiffs' behalf are null and void;

3.      For an award of consequential, compensatory, general and special damages to Plaintiffs, according to proof at trial, as to all of Plaintiffs' claims and damages, together with pre-judgment interest against all Defendants jointly and severally;

4.      For an order that Defendants were constructive trustees of Plaintiffs' property, payments, funds, and equity and place a constructive trust over such property, payments, funds, and that equity requires Defendants to pay to Plaintiffs all misappropriated property, payments, funds, and equity;

5.      For statutory damages;

6.      For treble damages where appropriate;

7.      For an order enjoining all unlawful practices complained of in this action and imposing affirmative injunctive relief requiring the Defendants and all persons acting in concert with them to implement policies designed to ensure that all fees are disclosed as required by law, that training and supervision be provided regarding compliance with applicable law for all Defendants and their employees and agents, and implementing thorough screening of all employees to ensure they are competent and trustworthy;

8.      For attorneys' fees and costs incurred pursuant to applicable law;

28

9.      For exemplary and punitive damages against Defendants in an amount according to proof at trial;

10.     For such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial.


DATED:  October 29, 2007


Daniel R. Weltin
Attorney for Plaintiffs

Galindo, et al. v. Financo, et al.
Second Amended Complaint

**EXHIBIT A**

EXHIBIT "A"

All that certain real property situated in the County of Alameda, State of California, described as follows:

(City of Hayward)

Portion of Block "P", as said Block is shown on the "Map of Annex to Meek Orchard Tract", filed March 11, 1918, in Book 17 of Maps, Page 59, in the Office of the County Recorder of Alameda County, described as follows:

Beginning at a point on the center line of Eden Road, distant thereon South 57 degrees 09 minutes West 145.56 feet from the center line of Manon Avenue, as said road  and avenue, as said road and avenue are shown on said map; running thence South 57 degrees 09 minutes West along said center line of Eden Road 60.12 feet; thence parallel with said centerline of Manon Avenue South 42 degrees 01 minutes East 166 feet, thence parallel with said center line Eden Road North 57 degrees 09 minutes East 60.12 feet; thence parallel with said center line of Manon Avenue North 42 degrees 01 minutes West a distance of 166 feet to the point of beginning.

**EXHIBIT B**

## EXHIBIT "B"

All that certain real property situated in the County of ALAMEDA, State of California, described as follows:

(CITY OF HAYWARD)

PORTION OF BLOCK "N" MAP OF ANNEX TO MEEK ORCHARD TRACT, FILED MARCH 11, 1918 MAP BOOK 16, PAGE 59, ALAMEDA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGIN AT A POINT ON THE CENTERLINE OF MANON AVENUE, DISTANT THEREON NORTH 42° 01' WEST 87.25 FEET FROM THE CENTERLINE OF SHEPHERD AVENUE, FORMERLY EDEN ROAD, AS SAID ROAD AND AVENUE ARE SHOWN ON SAID MAP; AND THEN RUN PARALLEL WITH SAID LINE OF SHEPHERD AVENUE, NORTH 57° 09' EAST 160 FEET TO THE MOST EASTERN CORNER OF THE LAND DESCRIBED IN THE DEED TO W. A. PLANT, ET UX, RECORDED JANUARY 23, 1959, BOOK 8910, OR, PAGE 416, (AQ/8427); THEN ALONG THE NORTHWESTERN LINE OF SAID LAST MENTIONED LAND, NORTH 39° 17' WEST 41.40 FEET: THEN NORTH 42° 01' WEST 70.33 FEET; THEN NORTH 52° 09' EAST 31.78 FEET TO THE SOUTHWESTERN LINE OF THE LAND DESCRIBED IN THE DEED TO EAST BAY CONSTRUCTION COMPANY INC., RECORDED SEPTEMBER 4, 1959, BOOK 9142, OR, PAGE 556 (AQ/105504), THEN ALONG THE LAST NAMED LINE, NORTH 32° 51' WEST 54.94 FEET TO THE MOST EASTERN CORNER OF THE LAND, DESCRIBED IN THE DEED TO W. A. PLANT, ET UX, RECORDED SEPTEMBER 4, 1959, BOOK 9142 OR, 557 (AQ/105505); THEN ALONG THE NORTHEASTERN LINE OF SAID LAST MENTIONED LAND, NORTH 32° 51' WEST 54.94 FEET; THEN SOUTH 57° 09' WEST 78.82 FEET TO THE NORTHEASTERN LINE OF THE LAND DESIGNATED AS PARCEL 2 IN THE DEED TO EAST BAY CONSTRUCTION COMPANY, INC. RECORDED JANUARY 20, 1959, BOOK 8906, OR, PAGE 376 (AQ/6668); THEN ALONG THE LAST NAMED LINE, SOUTH 57° 09' WEST 136.06 FEET TO SAID CENTERLINE OF MANON AVENUE; AND THEN ALONG THE LAST NAMED LINE, SOUTH 42° 01' EAST 112 FEET TO THE POINT OF BEGINNING. EXCEPTING THEREFROM THAT PORTION THEREOF CONVEYED TO THE CITY OF HAYWARD BY DEED RECORDED MARCH 23, 1971, SERIES NO. 32603, REEL 2811 OR, IMAGE 985.