IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA GALINDO, MARIA GALINDO<br><br>Plaintiffs,<br><br>v.<br><br>FINANCO FINANCIAL, INC.; PATRICK PATCHIN; AHMED YAMA ASEFI; AAROON SADAT; NAZIA NAWABZADA; COUNTRYWIDE BANK, N.A.; COUNTRYWIDE FINANCIAL CORP.; HOMECOMINGS FINANCIAL NETWORK; COMMONWEALTH LAND TITLE COMPANY; JOSEPH ESQUIVEL; PAMELA SPIKES; and DOES 1-100,<br><br>Defendants. | No. C 07-03991 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND GRANTING HOMECOMINGS' MOTION TO STRIKE** |

**INTRODUCTION**

In this predatory lending action, defendant Homecomings Financial LLC and defendants Financo Financial, Inc., Ahmed Yama Asefi, and Aaroon Sadat separately move to dismiss certain alleged claims. Homecomings also moves to strike portions of the complaint. For the reasons stated below, the motions to dismiss are **GRANTED IN PART AND DENIED IN PART** and the motion to strike is **GRANTED**.

**STATEMENT**

All well-pled allegations in the complaint are taken as true. Plaintiff Rosa Galindo had no formal education and was unable to read. She owned a fourplex investment property and a

home in Hayward. In around April or May of 2006, Galindo contacted her bank about refinancing the two properties to obtain additional funds to build a new home in Tracy. She then received several calls from various brokers and agents, including defendant Patrick Patchin who told her that he worked for Financo and could obtain a loan with fixed rates between 1.5% to 2.0% for the first five years. On May 16, Patchin came to Galindo's house with defendant Joseph Esquivel, a notary, and with the appropriate lending documents for the refinancing. Patchin told Galindo that Esquivel had to leave soon and rushed her into signing the documents without providing her with any copies. Patchin gave no explanation of the fees and charges being assessed and did not inform Galindo that the loan papers stated that Galindo earned $18,000 a month. The loan papers then went into escrow and were closed on May 23. In connection with the refinance, Financo received $18,262 in loan origination fees, $2,630 in administrative and processing fees, and $24,187.59 from the lender, Homecomings, as a "broker fee." Contrary to Patchin's assertions, the new loans did not have an initial period of five years at a fixed rate, but were adjustable balloon loans with an initial "teaser" rate of 1.75% which could be adjusted on a monthly basis beginning July 1, 2006, up to a maximum rate of 9.95%.

Believing that she had received a favorable loan from Patchin, Galindo introduced Patchin to her daughter, plaintiff Maria Galindo, who resided in a separate property in Hayward. Galindo and her daughter then entered into a separate loan transaction to refinance Maria's Hayward home. Financo received $6,888 in loan origination fees and $1,300 in administrative and processing fees. Galindo was also forced to pay a prepayment penalty fee for her prior loan. Galindo was not given copies of the loan documents until three weeks after the transaction.

In a separate incident, Galindo was directed by Patchin to a property for sale in Petaluma. Galindo then transferred $150,000 to Patchin for the purchase. Patchin informed Galindo, however, that the property was no longer available and instead had Galindo sign papers to purchase an alleged forty-acre parcel in Colusa. That parcel does not exist.

Defendants Ahmed Asefi and Aaroon Sadat are officers or agents of Financo. They are alleged to have undercapitalized Financo and commingled its assets with their own.

2

Plaintiffs filed the instant action in state court on June 29, 2007, which was removed on August 2, 2007. The complaint alleges seventeen claims against eleven defendants. A second amended complaint was filed on November 1, 2007. Homecoming now moves to dismiss plaintiffs' claims for: (1) negligence; (2) violation of the Truth In Lending Act; (3) violation of the Real Estate Settlement Procedures Act; (4) violation of the Consumers Legal Remedies Act; and (5) civil conspiracy. Homecomings also moves to strike portions of the complaint requesting punitive damages. Defendants Financo, Asefi, and Sadat (collectively, "Financo") move to dismiss the following claims: (1) violation of TILA; (2) violation of RESPA; (3) fraud based on intentional misrepresentation; (4) fraud based on concealment; (5) fraud based on negligent misrepresentation; (6) all claims based on an alter-ego theory; (7) violation of CLRA; (8) civil conspiracy; and (9) violation of California Civil Code Section 1632.

**ANALYSIS**

**1.  LEGAL STANDARD.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. The Supreme Court has recently explained that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (May 21, 2007). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Although materials outside of the pleadings should not be considered, a district court may consider all materials properly submitted as part of the complaint, such as exhibits. *Hal Roach Studios v. Richard Feiner and Co., Inc.*, 896 F.2d 1542,1555 n.19 (1990).[1]

**2.  NEGLIGENCE CLAIM.**

Homecomings moves to dismiss plaintiffs' negligence claim on the ground that Galindo is barred from recovering tort damages because her claim is based on contract. In support of its

---

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

3

argument, Homecomings relies on California state decisions that a plaintiff cannot recover tort damages for what is essentially a breach-of-contract claim. *See, e.g., Brown v. California Pension Admin. & Consultants, Inc.*, 45 Cal.App.4th 333, 346 ("[T]he [California] Supreme Court has rejected the transmutation of contract actions into tort actions in favor of a general rule precluding tort recovery for non-insurance contract breach, at least in the absence of violation of an independent duty arising from principles of tort law.").

For her part, Galindo argues that her claim is based on the "forseeability" of injury. As she puts it:

> [P]laintiff's claim of negligence against Homecomings is premised on the fundamental idea that Homecomings could foresee that maintaining and marketing abusive lending practices, and failing to verify the name and license of the brokers who sold loan products to plaintiff, would injure plaintiff. Based on the forseeability of harm to plaintiff, Homecomings had a duty to avoid causing harm to plaintiff. Homecomings breached that duty and caused plaintiff harm. Plaintiff does not claim that defendant owes it any heightened standard of care, but only the ordinary standard of using reasonable care to prevent harm to oneself or others.

The problem, however, is that the California Supreme Court, in *Erlich v. Menezes*, 21 Cal.4th 543, 551 (1999), has expressly rejected this type of tort-based theory:

> [C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.
>
> Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury; for breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public policy; or where the contract was fraudulently induced. In each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm.
>
> Plaintiff's theory of tort recovery is that mental distress is a foreseeable consequence of negligent breaches of standard commercial contracts. However, foreseeability alone is not sufficient to create an independent tort duty. Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability. Because the consequences of a negligent act must be limited to avoid an intolerable burden on society, the determination of duty recognizes that policy considerations may dictate a cause of action should not

4

> be sanctioned no matter how foreseeable the risk. [T]here are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone provides a socially and judicially acceptable limit on recovery of damages for [an] injury. In short, foreseeability is not synonymous with duty; nor is it a substitute.

Significantly, Galindo has not alleged any type of fraudulent inducement, or any type of fraud for that matter, by Homecomings. Accordingly, her negligence claim against Homecomings is hereby **DISMISSED**.

### 3. TILA CLAIM.

Homecomings and Finan002 next separately move to dismiss plaintiffs' TILA claim. Homecomings moves to dismiss on two separate grounds: (1) the claim is barred by the applicable statute of limitations and (2) Galindo's loan is not covered under TILA because it was made for business purposes. In its opposition to Financo's motion to dismiss, Galindo dropped her TILA claim as to Financo. This order will thus only address Homecomings' arguments.

#### A. Equitable Tolling.

With certain exceptions not applicable here, the statute of limitations for a TILA claim is one year. 15. U.S.C. 1640(e). Galindo admits that the limitations period began when the transaction was executed on May 23, 2006. She did not file her complaint until June 29, 2007. Instead, Galindo argues that the limitations period was tolled until July 2006 when she discovered that her loan was not set at a fixed rate. Homecomings maintains that the limitations period was not tolled because all of the material terms of the transaction were detailed in the loan contract which Galindo signed on May 23.

In *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986), the Ninth Circuit held that "the doctrine of equitable tolling, may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King* emphasized that in determining whether or not a limitations period should be tolled a district court should assess "whether tolling the statute [would] effectuate the congressional purpose of the Truth-in-Lending Act." *Ibid.*

5

Here, the pleaded circumstances justify tolling the limitations period. Significantly, the complaint alleges that Galindo was unable to read at the time she signed the loan documents. Patchin's verbal representations, therefore, were even more critical than in the average consumer transaction. Taking the allegations in the complaint as true, Patchin made representations to Galindo which she did not discover were false until July 2006. Under these alleged facts, this order finds that the limitations period on Galindo's TILA claim was tolled until July 2006 and that Galindo timely filed her complaint within the limitations period.

### B.  Consumer vs. Personal Loan.

Homecomings next contends that TILA does not apply to Galindo's loan because it was made for business purposes. "The Truth-in-Lending Act specifically exempts from its scope extensions of credit for business or commercial purposes." *Poe v. First Nat. Bank of DeKalb County*, 597 F.2d 895, 896 (5th Cir, 1979), *citing* 15 U.S.C. 1603(1) and 12 C.F.R. 226.3(a). In evaluating whether a certain loan was made for commercial purposes, the emphasis should be on the purpose of the transaction and not the categorization of the properties used to secure the loan. "Whether an investment loan is for a personal or a business purpose requires a case by case analysis." *Thorns v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir. 1984). Notably, Galindo refinanced two properties. One was a fourplex investment property and the other was a home which she has not alleged she resides in. She used the proceeds of the refinance to build a home in Tracy.

In a somewhat unexpected response, Galindo contends that there is no way to tell whether or not the loan was made for a business or personal purpose because she has not alleged any facts one way or the other in the complaint. That much is true. Without any such allegations detailing the purposes of the loan, Galindo has stated no claim. Her TILA claim is therefore **DISMISSED**.

### 4.  RESPA CLAIM.

Like TILA, RESPA "does not apply to credit transactions involving extensions of credit . . . primarily for business, commercial, or agricultural purposes . . . ." 12 U.S.C. 2606(a). In evaluating whether a certain loan was primarily for business purposes under RESPA, courts are

6

to apply the same standards as are used under TILA.  *See* 12 U.S.C. 2606(b).  Accordingly, for the same reasons set forth above, Galindo's RESPA claim is **DISMISSED**.

### 5. CLRA CLAIM.

The notice requirements of CLRA provide that:

> (a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:
>
>> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
>>
>> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.
>
> The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.

Cal. Civ. Code § 1782(a).  California courts require "strict" compliance with Section 1782. *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 40–41 (1975).  Plaintiffs filed the present action in state court on June 29, 2007.  Plaintiffs admit that they filed no notice as required by Section 1782 until October 1, 2007 — months after the state-court action was filed.  According to plaintiffs, however, the notice requirements were met because notice was given thirty days before the *second amended complaint* in this action was filed.  Plaintiffs cite to no support for this argument.  Significantly, Section 1782 requires that notice be given thirty days before the "*commencement* of an action" (emphasis added).  Notice, therefore, should have been given thirty days before June 29, 2007.  This was not done.  Defendants request that plaintiffs claim be dismissed with prejudice.  The Court is aware that Magistrate Judge James Stiven of the Southern District has dismissed a CLRA claim with prejudice where a plaintiff has failed to satisfy the pre-litigation requirements of Section 1782.  *See Von Grabe v. Sprint*, 312 F.Supp.2d 1285, 1394 (S.D. Cal. 2003).  The undersigned believes this draconian sanction is unwarranted here.  There are other disciplinary ways to deal with any willful disregard of the law, such as attorney's fees awards to name just one.  Accordingly, plaintiffs' CLRA claim is hereby **DISMISSED WITHOUT PREJUDICE**.

7

### 6.  CIVIL CONSPIRACY CLAIM.

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.  By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy.  In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–11 (1994).

In her opposition brief, Galindo has withdrawn her civil conspiracy claim as to Homecomings.  In addition, Galindo acknowledges that she has failed to adequately allege a civil conspiracy claim as against Financo and requests leave to amend.  As such, Galindo's civil conspiracy claim is hereby **DISMISSED**.

### 7.  CIVIL CODE SECTION 1632 CLAIM.

California Civil Code Section 1632(b) provides:

> Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement.

Again, Galindo admits that she has not adequately alleged a violation of Section 1632 and requests leave to amend.  Her Section 1632 claim is therefore **DISMISSED**.

### 8.  FRAUD CLAIMS.

Individual defendants Sadat and Asefi next move to dismiss Galindo's fraud claims for intentional misrepresentation, concealment, and negligent misrepresentation.  "Fraud is an intentional tort, the elements of which are:  (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Cicone v. URS Corp.*, 183 Cal.App.3d 194, 200 (1986).  In addition, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately

8

of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765–66 (9th Cir. 2007).

Here, plaintiffs have alleged that Sadat and Asefi were officers or agents of Financo and that Asefi's real estate broker license was used by Financo to engage in the mortgage-lending business. Plaintiffs have also alleged that Asefi and Sadat hired, trained, and supervised Patchin. Lastly, plaintiffs have alleged that Sadat and Asefi undercapitalized Financo and commingled its assets with their own thereby eliminating any separateness between Financo, Sadat, and Asefi. Under these alleged facts, this order finds that plaintiffs have properly pled fraud claims against Sadat and Asefi.

### 9. ALTER-EGO CLAIMS.

Sadat and Asefi also move to dismiss plaintiffs' claims based on the alter-ego doctrine. California courts have recognized two prongs to the alter-ego doctrine: (1) a unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist, and (2) that an inequitable result will follow if the acts are treated as those of the corporation alone. *See Webber v. Inland Empire Invs.*, 74 Cal.App.4th 884, 899 (1999).

Plaintiffs have alleged that Asefi and Sadat commingled assets of Financo, allowed Financo to be inadequately capitalized, and failed to recognize corporate formalities. The complaint further alleges a lack of separateness between all three parties. Given the strong allegations of fraud here and the probability that injustice would result if the alter-ego doctrine were eliminated, this order finds that plaintiffs' alter-ego claims have been adequately pled.

### 10. PUNITIVE DAMAGES.

Lastly, Homecomings moves to strike the portions of plaintiffs' complaint requesting punitive damages from Homecomings. In their opposition, plaintiffs seem to concede that their request for punitive damages are based on their fraud claims. Significantly, plaintiffs have not alleged any fraud as to Homecomings. Although it is not entirely clear from their opposition to the motion, plaintiffs appear to acknowledge that any punitive damage request with respect to Homecomings, based on the current allegations, is unwarranted. They have also voluntarily

9

withdrew paragraph 37 of the complaint dealing with recovery of punitive damages with respect to all defendants. Accordingly, Homecomings' motion is **GRANTED**.

### CONCLUSION

For the above stated reasons, the motions to dismiss are **GRANTED IN PART AND DENIED IN PART** and Homecomings' motion to strike is **GRANTED**. Many of the cited troubles with the second amended complaint may be cured. Plaintiffs may move by **OCTOBER 23, 2008**, for leave to amend. Any such motion should be accompanied by a proposed pleading and the motion should explain why the foregoing problems are overcome by the proposed pleading. Plaintiffs must plead her best case. Failing such a motion, all inadequately pled claims will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:  October 3, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE